**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**

**SOUTHERN DIVISION**

| | |
|---|---|
| _____ )<br>MIGUEL ANGEL FUENTES CORDOVA  and )<br>LEOBARDO MORALES INCLAN )<br>on behalf of themselves and all others )<br>similarly situated, )<br> )<br>  Plaintiffs, )<br> )<br>v. )<br> )<br>R & A OYSTERS, INC., RODNEY L. FOX, and )<br>ANN P. FOX )<br> )<br>  Defendants. )<br>_____) | Case No. 14-462<br><br><br>**COMPLAINT – CLASS ACTION** |

**FIRST AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

1.    Plaintiffs are migrant agricultural workers who were admitted to the United States to work under the H-2B temporary foreign worker visa program.  The Plaintiffs were employed in the oyster processing operations of Defendants R & A Oysters, Inc. d/b/a R & A Oyster Plant ("R & A"), Rodney L. Fox, and Ann P. Fox at various times during the period 2008 through the filing of this Complaint.  The Plaintiffs seek redress on behalf of themselves and all other similarly situated workers for the Defendants' violations of their rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801, *et seq.* ("AWPA"), and Alabama contract law.

1

2.     This action is brought on behalf of a class of over 100 migrant "guest workers" from Mexico who shucked oysters and performed other activities related to oyster processing for the Defendants.  The Plaintiffs are low-wage migrant workers brought by Defendants to the United States on temporary H-2B work visas because of an apparent shortage of U.S. workers. For years, the Plaintiffs and the other class members have left their homes and families in Mexico and spent considerable money and effort to come to the United States to work for Defendants.

3.     The Defendants failed to properly pay the Plaintiffs the federal minimum wage as required by the FLSA.  In addition, the Defendants violated the disclosure, recordkeeping, housing, wage statement, wage payment, and working arrangement provisions of the AWPA by failing to pay the Plaintiffs wages as required by the federal regulations applicable to Plaintiffs' employment as H-2B workers and incorporated into Plaintiffs' working arrangements and by failing to provide housing in accordance with federal law.  Defendants also breached their employment contract with Plaintiffs and the other class members. Furthermore, Defendants breached their contracts with the U.S. Department of Labor, which were intended to confer a benefit on Plaintiffs, including guaranteeing the wages that Plaintiffs would be paid.

4.     Plaintiffs seek an award of money damages, declaratory and injunctive relief, statutory and/or actual damages and pre- and post-judgment interest to make them whole for damages each of them suffered due to Defendants' violations of the law.  Plaintiffs seek declaratory and injunctive relief to ensure that they and others are not subjected to similar practices in the future.

## JURISDICTION

5.      Jurisdiction is conferred upon this Court by 29 U.S.C. § 216(b), this action arising under the FLSA, by 29 U.S.C. § 1854(a), this action arising under the AWPA, and by 28 U.S.C. § 1331, this action arising under the laws of the United States.  Jurisdiction over the state law contract claims is conferred by 28 U.S.C. § 1367 because these state claims are so closely related to the federal claims that they form part of the same case or controversy.

6.      Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).  As set out herein, a substantial part of the events giving rise to Plaintiffs' claim occurred in this district.

## PARTIES

8.      At all times relevant to this action, Plaintiffs and the other class members were admitted to the United States under the H-2B temporary foreign worker visa program, 8 U.S.C. § 1101(a)(15)(H)(ii)(b), administered in part by the United States Department of Labor.

9.      At all times relevant to this action, Plaintiffs and the other class members were migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. § 1802 and 29 C.F.R. § 500.20(p), in that they were employed in agricultural employment of a seasonal or temporary nature handling and processing oysters, an agricultural commodity, in their unmanufactured state and were required to be absent overnight from their permanent homes while engaged in agricultural employment with Defendants.

10.      At all times relevant to this action, Plaintiffs and the other class members were employees of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

11.     At all times relevant to this action, Plaintiffs and the other class members were employed by Defendants within the meaning of the AWPA, 29 U.S.C. § 1802(5) and the FLSA, 29 U.S.C. § 203(g).

12.     Defendant R & A Oysters, Inc. is a closely held Louisiana corporation that conducts business in this district, including the ownership and operation of three oyster processing plants and/or warehouses in Mobile County, Alabama.

13.     At all times relevant to this action, Defendant R & A was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), in that it operated oyster processing plants in Mobile County, Alabama and sold its products to businesses in various states outside of Alabama and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

14.     At all times relevant to this action, Defendant R & A was an agricultural employer of Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that it operated processing facilities and employed Plaintiffs and other migrant agricultural workers.

15.     Defendant Rodney L. Fox is an owner and officer of Defendant R & A. He is an individual resident of Louisiana who conducts significant business in this district.  Defendant Rodney L. Fox has significant contacts with the state of Alabama and this district such that jurisdiction and venue are proper in this Court.

16.     At all times relevant to this action, Defendant Rodney L. Fox employed the Plaintiffs and the other class members within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g).  Defendant Rodney L. Fox at all times maintained significant involvement in the management and day-to-day operations of R & A.  Rodney L. Fox also maintained substantial control over the terms and conditions of Plaintiffs' employment.

4

17.     Defendant Ann P. Fox is the secretary/treasurer of Defendant R & A. She is an individual resident of Louisiana. Defendant Ann P. Fox has significant contacts with the state of Alabama and this district such that jurisdiction and venue are proper in this Court.

18.     At all times relevant to this action, Defendant Ann P. Fox employed the Plaintiffs and the other class members within the meaning of 29 U.S.C. § 1802(5) and 29 U.S.C. § 203(g). Defendant Ann P. Fox at all times maintained significant involvement in the management and day-to-day operations of R & A.  Ann P. Fox also maintained substantial control over the terms and conditions of Plaintiffs' employment.

## FACTS

### H-2B Visas and Recruitment of Workers

19.     An employer in the United States may sponsor foreign guest workers to perform unskilled labor of a temporary nature if the United States Department of Labor ("DOL") certifies that (1) there are insufficient available workers within the United States to perform the jobs, and (2) the employment of foreign guest workers will not adversely affect the wages and working conditions of similarly situated U.S. workers.  8 U.S.C. § 1101(a)(15)(H)(ii)(b).

20.     An employer seeking the admission of H-2B workers must first file a temporary labor certification application with DOL. 20 C.F.R. § 655.20 (2008).[1]  This application must include an attestation from the employer that it will abide with applicable regulatory requirements, including:

---

[1]     The DOL application for temporary employment certification of H-2B workers is titled the "ETA Form 9142B," and it may be found at http://www.foreignlaborcert.doleta.gov/pdf/OMBETAForm9142.pdf.  The accompanying attestations are located on the Form 9142B Appendix B.1, which can be found at http://www.foreignlaborcert.doleta.gov/pdf/Form_9142_AppendixB_1_012309.pdf.  Prior to January 18, 2009, the ETA Form 9142B was called the ETA Form 750.  Substantively, the two forms are nearly identical.  *See* Archived Version of the ETA Form 750, attached as Exhibit A.

   a.  Payment to all workers of at least the applicable prevailing wage during the entire period of the H-2B labor certification. 20 C.F.R. § 655.22(e) (2008); and

   b.  Limiting deductions from wages to only those that are "reasonable." DOL has determined that expenses related to the worker's procurement of a visa and travel from his home to the employer's worksite primarily benefit the employer and are not "reasonable" within the meaning of the FLSA. Accordingly, an employer may not shift these costs to the worker when doing so would effectively bring the worker's earnings below the applicable minimum and/or prevailing wage for the first workweek of employment. 20 C.F.R. § 655.22(g)(1) (2008); Field Assistance Bulletin No. 2009-2, August 21, 2009.

21.    Defendant R & A applied for temporary labor certifications to employ foreign workers in Alabama between 2008 and the filing of this Complaint, including, *inter alia*, shucking oysters. The temporary labor certification applications identified Defendant R & A as the prospective employer of H-2B workers and sought certification for the following time periods:

   a.  August 15, 2008 to May 9, 2009;

   b.  August 1, 2009 to July 15, 2010;

   c.  October 1, 2010 to July 15, 2011;

   d.  October 1, 2011 to July 15, 2012;

   e.  October 1, 2012 to July 15, 2013;

   f.  October 1, 2013 to July 14, 2014;

   g.  July 19, 2013 to December 31, 2013; and

   h.  July 15, 2014 to December 31, 2014.

22.     Each of the temporary labor certifications contained an attestation pursuant to 20 C.F.R. § 655.20 (2008) that R & A would abide with applicable regulatory requirements pertaining to the H-2B temporary work program and federal and state laws, including the requirement that Defendants pay the Plaintiffs and other class members at least the prevailing wage.

23.     Despite certifying to the U.S. government that Defendants would pay their H-2B workers an hourly wage, approximately 50% of Defendants' H-2B workers in Alabama are paid on a salary basis.

24.     The temporary labor certification (ETA Form 9142B), the accompanying attestations (Appendix B.1), and the H-2B program's regulatory requirements form part of the working arrangements between Defendants and Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1822(c).

25.     The DOL-approved temporary labor certification (ETA Form 9142B), the accompanying attestations, and the applicable regulatory requirements formed a contract between Defendants and Plaintiffs with enforceable terms and conditions of employment, including an enforceable guarantee of wages no less than the federal minimum and prevailing wage.

26.     The DOL-approved labor certifications formed valid and enforceable contracts between Defendants and DOL, which were clearly and definitely intended to confer benefits on the Plaintiffs and other class members, as they established the essential terms of the working arrangements, including the guarantee that Plaintiffs would not be paid less than the federal minimum and prevailing wage.

27.    DOL reviewed and ultimately approved each of Defendants' temporary labor certification applications pursuant to 20 C.F.R. § 655.23(b), allowing Defendants to import H-2B workers to fill the labor needs set out in its temporary labor certification applications for the periods 2008 to 2014.

28.    Plaintiffs and the other class members maintain their permanent residences at various locations in Mexico where they learned of the job opportunities with Defendants.

29.    Plaintiffs and the other class members spent considerable sums of money to obtain their H-2B work visas and travel from their home villages to the United States to work for Defendants in Alabama.  Plaintiffs and other class members incurred these costs, which were primarily for the benefit of their employer.

30.    Prior to the commencement of the oyster processing seasons between 2008 and 2014, R & A relied on its agent in Mexico, Luis Chavez, to facilitate the hiring of the Plaintiffs and the other class members.  Luis Chavez is the brother of Connie L. Chavez of Brownsville, Texas, who is listed as Defendants' agent on its temporary labor certification applications. Luis Chavez helped to process Plaintiffs' and the other class members' visa applications, coordinated Plaintiffs' consular interviews, and arranged Plaintiffs' transportation to the United States.

31.    Prior to the commencement of the 2008-2009, 2009-2010, 2010-2011, and 2011-2012 oyster processing seasons, Plaintiff Fuentes Cordova and the other class members who worked those seasons were required to pay Luis Chavez a fee of  $100.00 to obtain their visas.

32.    Prior to the commencement of the oyster processing seasons between 2008 to 2014, Defendants required Plaintiffs and the other class members to pay for the cost of transportation from their hometowns to Matamoros, where they attended their consular

interviews necessary for the issuance of H-2B visas.  These transportation costs were approximately $150.00 for each worker.

33.     Plaintiffs and the other class members were required to pay for lodging costs in Matamoros while they waited for their consular interview necessary for issuance of the H-2B visa.  Plaintiffs' lodging costs were approximately $20.00 each.

34.     Plaintiffs were required to take taxi cabs back and forth from their hotel to the consulate during their stay in Matamoros, which cost each Plaintiff approximately $9.00.

35.     After receiving their H-2B visas, Plaintiffs and the other class members entered the United States at Brownsville, Texas, where on each occasion they paid $6.00 to U.S. immigration officials for issuance of an arrival and departure record, commonly referred to as Form I-94.

36.     Plaintiffs and the other class members traveled to Grand Bay and Bayou la Batre, Alabama on a bus that was chartered by R&A.  Plaintiffs and the other class members each paid the bus fare, which cost approximately $170.00.

37.     The expenses incurred by Plaintiffs and the other class members to come work for Defendants, as set out in paragraphs 31-36, were primarily for the benefit of Defendants within the meaning of the FLSA, 29 C.F.R. §§ 531.32(c) and 778.217.

38.     Defendants did not reimburse the Plaintiffs or the other class members for the expenses they incurred to come work for Defendants, listed in paragraphs 31-36 above.

39.     The visa, transportation, lodging, and border crossing costs described in paragraphs 31-36 operated as *de facto* involuntary deductions from, and/or kickback of, the Plaintiffs' and other class members' first week's wages.

40.     The above *de facto* deductions for visa, transportation, lodging, border crossing costs that were primarily for the benefit of the Defendants caused the wages of the Plaintiffs and the other class members to fall below the minimum level required by the FLSA and the federal prevailing wage mandated under the H-2B program during their first workweek.

41.     Throughout the course of the Plaintiffs' and the other class members' employment, Defendant withheld sums from Plaintiffs' wages for required tools and equipment, including gloves, overalls, boots, and knives.  These tools and equipment were primarily for the benefit of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203, and its implementing regulations, 29 C.F.R. § 531.3(d).

42.     Defendants' deductions for tools and equipment caused the wages of the Plaintiffs' and the other class members to fall below the minimum wage under the FLSA and the prevailing wage required under the H-2B program.

43.     Throughout the course of the Plaintiffs' and the other class members' employment, Defendant failed to make, keep, and preserve payroll records for Plaintiffs for each pay period as required by the AWPA, 29 U.S.C. § 1821(d)(1), and its implementing regulations, 29 C.F.R. § 500.80(a). Among other things, the payroll records did not show the number of compensable hours that were paid at piece rate wages versus hourly wages.

44.     Throughout the course of the Plaintiffs' and the other class members' employment, Defendants failed to provide the Plaintiffs and the other class members on every pay day with an itemized statement as required by the AWPA, 29 U.S.C. § 1821(d)(2), and its implementing regulations, 29 C.F.R. § 500.80(d). Among other things, the wage statements did not show the number of compensable hours worked at piece rate wages versus hourly wages.

45.     At no time during their employment with Defendants did the Plaintiffs or the other class members ever receive a written disclosure statement at the time of recruitment providing information such as the wage rate to be paid, the period of employment, the benefits to be provided to employees, or the costs to be charged, as required by 29 U.S.C. § 1821(a).

46.     Throughout the course of the Plaintiffs' and the other housing subclass members' employment, the Plaintiffs and the housing subclass members lived in employer housing in Alabama.

47.     Throughout the course of the Plaintiffs' and the other housing subclass members' employment, the Defendants owned and controlled the housing where the Plaintiffs and the other housing subclass members lived.

48.     Defendants did not request an inspection of the housing or receive a certification that the housing complied with applicable health and safety codes, in violation of the AWPA, 29 U.S.C. §§ 1823(a),(b)(1).

49.     Defendants failed to post or provide to the workers a statement of the terms and conditions of housing, in violation of the AWPA, 29 U.S.C. § 1821(c).

**Oyster Farming**

50.     R & A Oysters, Inc. sells oysters harvested from Louisiana, the Gulf of Mexico, and/or nearby waters to retailers throughout the southeastern United States.

51.     Louisiana, like other states, has turned to a process called "oyster farming" or "oyster aquaculture" to ensure a robust supply of oysters in an era when consumption and other factors have pushed traditional harvesting methods beyond sustainable levels.

11

52.     The State of Louisiana permits private oystermen to lease water bottoms from the state in part to stimulate oyster production and farm oysters.  Louisiana leases more acreage than any other state for the purpose of oyster cultivation.

53.     The State of Louisiana maintains large acres of water bottoms that are designated as public oyster seed grounds.  The State actively manages those grounds to ensure a steady supply of oyster seeds, which oystermen can collect and transplant to the beds in their private leases.  The State's management practices include planting hard substrate material (such as shells or limestone) on the water bottoms – a practice called "cultching" – so that the oyster larvae in the water may attach to it and grow.  Oystermen who have the required permits can then collect the recently settled oysters and transport them to their beds.

54.     Defendant Rodney L. Fox leases approximately 15,000 acres of private water bottoms in Louisiana for the purpose of cultivating and harvesting oysters.  In 2010, Defendant Rodney L. Fox invested approximately $500,000 a year to cultivate his leased oyster beds.

55.     Each year, Defendant Rodney L. Fox, transplants small seed oysters from public grounds to the established, hard reefs in his private leases.  Defendant establishes his beds by laying "cultch" to strengthen the reef that supports the transplanted seed oysters.  If his water bottoms are too soft or muddy to handle a reef, Defendant develops them over time, including using the crop rotation technique that farmers use on land.

56.     After the oysters have grown and are mature enough to be ready for market (usually after 1 to 2 years), Defendant employs his fleet of boats to harvest them from the water bottoms and pack them into burlap sacks to be taken to the processing facilities in Alabama.

**Oyster Processing**

57.     R & A employs workers in its processing plants in Alabama to manually "shuck" oysters and prepare oysters by the "half shell" and place the meats or half shell oysters in various types of containers for sale to restaurants, retailers, and others.

58.     Throughout the course of their employment with Defendants, Plaintiffs and the other class members were employed in the handling and processing of oysters in their unmanufactured state in Alabama.

59.     Plaintiffs and the other class members shuck crates of oysters by opening them with a knife that is slid between the shell of the oyster and twisted until the oyster pops open. The workers then remove the oyster meat inside the shell by sliding the blade of the knife across the shell to cut the adductor muscle holding the oyster together. The workers then place the oyster meat into a bucket with water.  Once they finish shucking a crate of oysters they weigh the meat and record the weight.  The shucked meat is then washed, packaged, and frozen until delivered to customers.

60.     Plaintiffs and other class members also processed half shell oysters.  This job requires removing the top shell of the oyster only with a knife and a hammer and packing it into trays that accommodate a certain number of half shell oysters each. The half shell oysters are then frozen via a cryogenic freezing process, which reduces the presence of the harmful bacteria (vibrio vulnificus) that oysters are known to carry.  Once frozen and packaged, the oysters are shipped to customers.

61.     Processed and packaged oysters are shipped to customers by Defendants' fleet of trucks.

62.     Plaintiffs and other class members were required to wear gloves, overalls, and boots as protection from the shucking knives.  Plaintiffs and other class members were required to purchase their oyster knives, overalls, gloves, and boots.

### COLLECTIVE ACTION/ CLASS ACTION ALLEGATIONS

63.     Plaintiffs seek to bring their Fair Labor Standards Act claims (Count I) as a representative action on behalf of "all non-supervisory workers admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in Alabama between October 8, 2011 and the present, and who were paid on an hourly basis." These workers are all similarly situated with respect to the pay practices challenged in this suit – i.e., Defendants' practice of not reimbursing the transportation, lodging, border crossing, and visa costs incurred by Plaintiffs and other H-2B workers in coming to work for Defendants, and Defendants' practice of requiring Plaintiffs and other H-2B workers to effectively purchase the tools and equipment required to perform the job.  Plaintiffs contend these practices result in violation of the FLSA because the pre-employment expenses constitute *de facto* deductions from the workers' wages causing their wages to fall below the amount required by the FLSA during their first workweek, and the actual and *de facto* deductions for tools caused the workers' wages to fall below the amount required by the FLSA.

64.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs Miguel Angel Fuentes Cordova and Leobardo Morales Inclan have consented in writing to be party plaintiffs in this FLSA action. Their written consents are attached to this Complaint as Exhibit B.

65.     All claims set forth in Counts II, III, and IV are brought by the Plaintiffs on behalf of themselves and all similarly situated workers pursuant to Federal Rule of Civil Procedure 23(b)(3).

66.     The named Plaintiffs seek to represent a class consisting of "all those individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by the Defendants in Alabama between October 8, 2008 until the date of filing of the present action, and who were paid on an hourly basis"

67.     The Plaintiffs also to represent a housing subclass consisting of "all individuals admitted as H-2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b), who were employed by Defendants in Alabama from October 8, 2008 until the date of the filing of the present action, and who lived in employer housing."

68.     The proposed class and housing subclass meet the requirements of Rule 23(a) as follows:

**Numerosity**

69.     The precise number of individuals in the class and the housing subclass is known only to the Defendants.  The class and housing subclass are believed to include over 100 individuals.

70.     The class and the housing subclass are comprised principally of indigent migrant workers who maintain their residences in locations throughout Mexico.  The class and housing subclass members are not fluent in the English language.  The relatively small size of individual claims, the geographical dispersion of the classes, and the indigency of the class and housing subclass members makes the maintenance of separate actions by each class member economically infeasible.  Joinder of all class members is impracticable.

**Commonality**

71.     There are questions of fact and law common to the class and the housing subclass. The common contentions that unite the claims are the following:

a. Whether the failure of the Defendants to pay the Plaintiffs and the other class members the prevailing wage for all compensable hours as required by the H-2B temporary foreign labor program violated the AWPA's wage payment and working arrangement provisions;

b. Whether the Defendants' failure to maintain complete and accurate records regarding the Plaintiffs' and the class members' work and Defendants' failure to provide the Plaintiffs and the other class members with accurate wage statements and written disclosures were violations of AWPA;

c. Whether the failure of the Defendants to pay the Plaintiffs and the other class members the prevailing wage for all hours worked as required by the H-2B temporary foreign labor program violated the employment contract; and

d.  Whether the failure of the Defendants to pay the Plaintiffs and the other class members the prevailing wage for all hours worked as required by the H-2B temporary foreign labor program violated the Defendants' contract with DOL of which the Plaintiffs and other class members were intended beneficiaries.

72.     The common contention that unites the claims of the housing subclass is whether the Defendants' migrant worker housing facilities were in violation of AWPA.

**Typicality**

73.     The claims of the named Plaintiffs are typical of the class and the housing subclass in that the named Plaintiffs incurred the same transportation, lodging, border crossing, and visa costs as the other class members, and Plaintiffs lived in the company-provided housing along with the other housing subclass members.  Because the Plaintiffs and the proposed class

16

challenge the lawfulness of the company's pay and housing practices, it is anticipated that Defendants will assert similar defenses as to all of the individual Plaintiffs and class members.

**Adequacy of Representation**

74.     Plaintiffs are adequate class representatives.   The named Plaintiffs have the same interest as do the other members of the class and the housing subclass and will fairly and adequately protect the interests of the class and subclass.  Plaintiffs have no conflict of interest with other class members and they understand their responsibilities as class representatives.

75.     Counsel for Plaintiffs, the Southern Poverty Law Center, has handled numerous AWPA and FLSA actions in the federal courts, including as class counsel.  They are prepared to advance litigation costs as necessary to vigorously litigate this action.

76.     The class and the housing subclass meet the requirements of the Federal Rules of Civil Procedure 23(b)(3) as follows:

**Predominance of Common Questions**

77.     The questions of law or fact common to the class and the housing subclass predominate over any questions affecting only individual members because the dominant issue for all class members is the legality of the Defendants' pay and housing practices, which applied to all class and housing subclass members.

**Superiority**

78.     A class action under Rule 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*:

> a.   The relatively small size of the individual class members' claims substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

b.  Many members of the class are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

c.  There has been no litigation already commenced against the Defendants by the members of the class to determine the questions presented;

d.  It is desirable that the claims be heard in this forum since the Defendants have significant contacts with this district; and

e.  A class action can be managed without undue difficulty since the Defendants have regularly committed the violations complained of herein, and are required to maintain detailed records concerning each member of the class.

<u>**COUNT I**</u>
**FAIR LABOR STANDARDS ACT**
**(COLLECTIVE ACTION)**
***Against All Defendants***

79.     All the foregoing allegations are incorporated by reference as if set forth fully herein.

80.     This count sets forth a claim for declaratory relief and damages for the Defendants' violation of the minimum wage provisions of the Fair Labor Standards Act ("FLSA"). This count is brought by the Plaintiffs on behalf of themselves and other current or former H-2B workers employed by the Defendants in Alabama who are similarly situated.

81.     The Defendants violated the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs and other H-2B workers at least $7.25, the federal minimum wage, for every compensable hour of labor they performed during each workweek they were employed.

82.     The violations of the FLSA set out in Paragraph 80, resulted, in part, from the Defendants' failure to reimburse the Plaintiffs and others similarly situated for certain pre-employment expenses they incurred which were primarily for the benefit of the Defendants,

reducing Plaintiffs' wages below the minimum wage for the first workweek, as set forth in Paragraphs 31-40.

83.     The violation of the FLSA set out in Paragraph 80 resulted, in part, from the Defendants' deductions for repayment of loans for tools and equipment primarily for the benefit of the Defendants, as set forth in Paragraphs 41-42.

84.     The Defendants' failure to pay the Plaintiffs and others similarly situated their federally mandated minimum wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 225(a).

85.     As a consequence of Defendants' violations of the FLSA, the Plaintiffs and others similarly situated are entitled to recover their unpaid minimum wages, plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b).

## COUNT II
## MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT (CLASS ACTION)
### *Against All Defendants*

86.     All the foregoing allegations are incorporated by reference as if set forth fully herein.

87.     This count sets forth a claim by the Plaintiffs and the other members of the class for money damages, declaratory relief and injunctive relief, with respect to the Defendants' violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") and its attendant regulations.

88.     At all times relevant to this action, Plaintiffs and the other class members were employed in agricultural employment involving the handling, processing, freezing, or grading prior to delivery for storage of an agricultural commodity in its unmanufactured state.

89.     The Defendants' temporary labor certification (ETA Form 9142B), the accompanying attestations, and the law and regulations applicable to the H-2B program constituted the AWPA working arrangement between the Defendants and the Plaintiffs and the other class members.

90.     Defendants violated its working arrangement with Plaintiffs by:

   a.   Failing to pay Plaintiffs and the other class members the prevailing wage for the first week of employment by failing to reimburse them for certain pre-employment expenses they incurred primarily for the benefit of Defendants, as set forth in Paragraphs 31-40;

   b.   Failing to pay Plaintiffs and the other class members the prevailing wage for every compensable hour worked by deducting repayments for a loan for required work tools as set forth in Paragraphs 41-42.

91.     Defendants failed to provide Plaintiffs and the other class members with written disclosures required by the AWPA, 29 U.S.C. § 1821(a), and its implementing regulations, 29 C.F.R. § 500.88(a).

92.     Defendants failed to make, keep, and preserve payroll records for Plaintiffs and the other class members as required by the AWPA, 29 U.S.C. § 1821(d)(1), and its implementing regulations, 29 C.F.R. § 500.88(a).  Among other things, the payroll records do not show the number of hours worked at piece rate wages.

93.     Defendants did not provide Plaintiffs and the other class members on each pay day with an itemized pay statement as required by AWPA, 29 U.S.C. § 1821(d)(2), and its implementing regulations, 29 C.F.R. § 500.88(d).  Among other omissions, the wage statements

omitted the employer's Internal Revenue Service identification number and the number of compensable hours worked at piece rate wages.

94.     Defendants did not request an inspection of the housing or receive a certification that the housing complied with applicable health and safety codes in violation of the AWPA, 29 U.S.C. §§ 1823(a),(b)(1).

95.     Defendants failed to post or provide to the Plaintiffs and the other housing subclass members a statement of the terms and conditions of housing in violation of the AWPA, 29 U.S.C. § 1821(c).

96.     The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

97.     As a result of Defendants' violations of the AWPA and its attendant regulations as set forth in this count, Plaintiffs and the other class members have suffered damages.

## COUNT III
## BREACH OF EMPLOYMENT CONTRACT
### (CLASS ACTION)
### *Against Defendants R&A Oysters, Inc. and Rodney L. Fox*

98.     All the foregoing allegations are incorporated by reference as if set forth fully herein.

99.     This count sets forth a claim for damages resulting from Defendants' R & A Oysters, Inc.'s and Rodney L. Fox's breaches of their employment contracts with Plaintiffs and the other class members.

100.    The terms and conditions provided in the temporary labor certification (ETA Form 9142B), its accompanying attestations, and the law and regulations applicable to the H-2B program constituted the employment contracts between Plaintiffs and Defendants.

101.     Plaintiffs and the other class members satisfactorily performed all employment duties and responsibilities required of them under the employment contracts with the Defendants.

102.     The Defendants breached the employment contracts with Plaintiffs by compensating the Plaintiffs at rates below the federal minimum wage and applicable prevailing wage for their work.

103.     Defendants' breach of the employment contracts caused the Plaintiffs substantial injuries, for which Plaintiffs and the other class members are entitled to actual and consequential damages and prejudgment interest.

## COUNT IV
## THIRD-PARTY BENEFICIARY CLAIM OF BREACH OF CONTRACT
## (CLASS ACTION)
### *Against Defendants R&A Oysters, Inc. and Rodney L. Fox*

104.     All the foregoing allegations are incorporated by reference as if set forth fully herein.

105.     This count sets forth a third-party beneficiary claim for damages resulting from the breach of the contracts between the U.S. Department of Labor and R & A Oysters, Inc. and Rodney L. Fox during the oyster seasons between 2008 and 2014.

106.     The temporary labor certifications (ETA Form 9142B) filed by Defendants R & A and Rodney L. Fox, as described in paragraphs 20-27, and subsequently approved by DOL, constitute valid and enforceable contracts.

107.     These contracts were clearly and definitely intended to confer benefits on the Plaintiffs and other class members, as they established the essential terms of the working arrangements, including the Plaintiffs' rate of pay, between Defendants and the Plaintiffs, as described in paragraphs 20, 22, 24, and 25.

108.    Plaintiffs and the other class members are third-party beneficiaries of the contracts the Defendants entered into with DOL.

109.    Defendants breached their contracts with DOL by compensating Plaintiffs at rates less than the federal minimum wage and the applicable prevailing wage for their work.

110.    Defendants' breach of their contracts with DOL caused the Plaintiffs substantial injuries, for which Plaintiffs and the other class members are entitled to actual and consequential damages and prejudgment interest.

## COUNT V
## RETALIATION UNDER THE FAIR LABOR STANDARDS ACT
*(By Bartolo Alejandro de la Cruz, Asbel Angulo Quintana, Isidro de la Cruz Hernandez, Lisandro de la Cruz Torea, Leobardo Dominguez Amezquita, Juan Hernandez Wilson, and Leobardo Morales Inclan)*
***Against All Defendants***

111.    All the foregoing allegations are incorporated by reference as if set forth fully herein.

112.    This count sets forth a claim for declaratory relief, injunctive relief, and damages for Defendants' violations of the FLSA's anti-retaliation provisions.

113.    In July 2014, Defendants promised to sponsor many of the Plaintiffs and Opt-in Plaintiffs, including Bartolo Alejandro de la Cruz, Asbel Angulo Quintana, Isidro de la Cruz Hernandez, Lisandro de la Cruz Torea, Leobardo Dominguez Amezquita, Juan Hernandez Wilson, and Leobardo Morales Inclan, for H-2B visas for the following 2014-2015 oyster season, just as Defendants had promised and done in previous years.

114.    Prior to November 19, 2014, several Opt-in Plaintiffs, including Raciel Alejandro de la Cruz, Isais de la Cruz Vincente, Jorge Luis Espinosa Arias, Javier Hernandez Hernandez, and Samuel Wilson Vincente received their H-2B visas.

115.    On October 8, 2014, Plaintiffs Miguel Angel Fuentes Cordova, Leobardo Morales

Inclan, and other Opt-In Plaintiffs filed this lawsuit, asserting, in part, their rights under the FLSA. On November 19, 2014, Defendants R&A and Ann P. Fox were served with notice of this suit; on November 23, 2014, Rodney L. Fox was served with notice of this suit.

116.    Plaintiffs' lawsuit constituted protected activity under the FLSA.

117.    In response to Plaintiffs' lawsuit, on December 10, 2014, Defendants unlawfully retaliated against Bartolo Alejandro de la Cruz, Asbel Angulo Quintana, Isidro de la Cruz Hernandez, Lisandro de la Cruz Torea, Leobardo Dominguez Amezquita, Juan Hernandez Wilson, and Leobardo Morales Inclan ("Retaliated Plaintiffs") by revoking the offer to sponsor them for H-2B visas. Defendants' conduct in response to Plaintiffs' protected activity violated the FLSA's anti-retaliation provisions, 29 U.S.C. § 215(a)(3).

118.    As a result of Defendants' unlawful and retaliatory conduct as described above, Plaintiffs Alejandro de la Cruz, Angulo Quintana, de la Cruz Hernandez, de la Cruz Torea, Dominguez Amezquita, Hernandez Wilson, and Morales Inclan suffered substantial damages.

119.    As a result of Defendants' unlawful and retaliatory conduct as described above, Retaliated Plaintiffs are entitled to recover damages, and any other legal or equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3), pursuant to 29 U.S.C. § 216(b). All Plaintiffs seek an order enjoining the Defendants from retaliating against the Plaintiffs, Opt-In Plaintiffs, and any of the Defendants' present or former H-2B workers, many of whom are prospective members of the FLSA collective action.

## COUNT VI
## RETALIATION UNDER THE MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT
*(By Bartolo Alejandro de la Cruz, Asbel Angulo Quintana, Isidro de la Cruz Hernandez, Lisandro de la Cruz Torea, Leobardo Dominguez Amezquita, Juan Hernandez Wilson, and Leobardo Morales Inclan)*
### *Against All Defendants*

120.     All the foregoing allegations are incorporated by reference as if set forth fully herein.

121.     This count sets forth a claim for declaratory relief, injunctive relief, and damages for Defendants' violations of the AWPA's anti-retaliation provisions.

122.     In July 2014, Defendants promised to sponsor many of the Plaintiffs and Opt-in Plaintiffs, including Bartolo Alejandro de la Cruz, Asbel Angulo Quintana, Isidro de la Cruz Hernandez, Lisandro de la Cruz Torea, Leobardo Dominguez Amezquita, Juan Hernandez Wilson, and Leobardo Morales Inclan, for H-2B visas for the following 2014-2015 oyster season, just as Defendants had promised and done in previous years.

123.     Prior to November 19, 2014, several Opt-in Plaintiffs, including Raciel Alejandro de la Cruz, Isais de la Cruz Vincente, Jorge Luis Espinosa Arias, Javier Hernandez Hernandez, and Samuel Wilson Vincente received their H-2B visas.

124.     On October 8, 2014, Plaintiffs Miguel Angel Fuentes Cordova, Leobardo Morales Inclan, and other Opt-In Plaintiffs filed this lawsuit, asserting, in part, their rights under the AWPA. On November 19, 2014, Defendants R&A and Ann P. Fox were served with notice of this suit; on November 23, 2014, Rodney L. Fox was served with notice of this suit.

125.     Plaintiffs' lawsuit constituted protected activity under the AWPA. 29 U.S.C. § 1855(a).

126.     In response to Plaintiffs' lawsuit, on December 10, 2014, Defendants unlawfully retaliated against Bartolo Alejandro de la Cruz, Asbel Angulo Quintana, Isidro de la Cruz Hernandez, Lisandro de la Cruz Torea, Leobardo Dominguez Amezquita, Juan Hernandez Wilson, and Leobardo Morales Inclan ("Retaliated Plaintiffs") by revoking an offer to sponsor them for H-2B visas.

127.     Defendants' conduct in response to Plaintiffs' protected activity violated the AWPA's anti-retaliation provisions, 29 U.S.C. § 1855(a).

128.     As a result of Defendants' unlawful and retaliatory conduct as described above, Plaintiffs Alejandro de la Cruz, Angulo Quintana, de la Cruz Hernandez, de la Cruz Torea, Dominguez Amezquita, Hernandez Wilson, and Morales Inclan suffered substantial damages.

129.     As a result of Defendants' unlawful and retaliatory conduct as described above, Retaliated Plaintiffs are entitled to recover damages, and any other legal or equitable relief as may be appropriate to effectuate the purposes of Section 1855(a). All Plaintiffs seek an order enjoining the Defendants from retaliating against the Plaintiffs and any of the Defendants' present or former H-2B workers, many of whom are prospective members of the AWPA class action.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs and the other class members pray this Court will enter an order:

1. Permitting this case to proceed as a collective action with respect to the claims set forth in Count I;

2. Certifying this case as a class action in accordance with Federal Rules of Civil Procedure 23(b)(3) with respect to the claims set forth in Counts II, III, and IV;

3. Granting judgment in favor of Plaintiffs and others similarly situated and against Defendants R & A Oysters, Inc., Rodney L. Fox, and Ann P. Fox, jointly and severally, on Plaintiffs' claims under the FLSA and awarding each of them the amount of his unpaid minimum wages, along with an equal amount of liquidated damages;

4.  Declaring Defendants have violated the record-keeping, disclosure, wage statement, wage payment, working arrangement, and housing provisions of the Migrant and Seasonal Agricultural Worker Protection Act;

5.  Granting judgment in favor of the Plaintiffs and the other class members against Defendants R & A Oysters, Inc., Rodney L. Fox, and Ann P. Fox, jointly and severally, on Plaintiffs' claims under the AWPA and awarding each of them his actual damages or $500.00 in statutory damages, whichever is greater, for each violation of the Act:

6.  Permanently enjoining Defendants from further violations of the AWPA;

7.  Granting judgment in favor of Plaintiffs and the other class members against Defendants R & A Oysters, Inc. and Rodney L. Fox, jointly and severally, for breach of the employment contracts with Plaintiffs, and awarding each of the Plaintiffs his actual and consequential damages and prejudgment interest;

8.  Granting judgment in favor of third party beneficiaries Plaintiffs and the other class members against Defendants R & A Oysters, Inc. and Rodney L. Fox, jointly and severally, for breach of Defendants' contracts with the U.S. Department of Labor, and awarding each of the Plaintiffs his actual and consequential damages and prejudgment interest;

9.  With respect to Counts V and VI, declaring that Defendants have violated the anti-retaliation provisions of the Fair Labor Standards Act and the Migrant and Seasonal Agricultural Worker Protection Act;

10. With respect to Counts V and VI, granting judgment in favor of the Retaliated Plaintiffs and against Defendants R & A Oysters, Inc. and Rodney L. Fox, jointly and severally, for violating the anti-retaliation provisions of the Fair Labor Standards Act and the Migrant

and Seasonal Agricultural Worker Protection Act and awarding each of the Retaliated

Plaintiffs his actual damages or, in the case of the AWPA, $500.00 in statutory damages,

whichever is greater, and granting such injunctive relief as may be appropriate;

11. Awarding Plaintiffs the cost of this action;

12. Awarding Plaintiffs a reasonable attorney's fee with respect to their claims under the

FLSA; and

13. Granting such relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Meredith B. Stewart

Meredith B. Stewart* (Louisiana Bar No. 34109)
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue, Suite 505
New Orleans, LA 70130
Telephone: (504) 526-1497
Facsimile: (504) 486-8947
Email: Meredith.stewart@splcenter.org
*Admitted *pro hac vice*

/s/ Eunice H. Cho___
Eunice Hyunhye Cho* (California Bar No. 266417)
James M. Knoepp* (Georgia Bar No. 366241)
SOUTHERN POVERTY LAW CENTER
1989 College Ave. NE
Atlanta, GA 30317
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
Eunice.cho@splcenter.org
Jim.knoepp@splcenter.org
*Admitted *pro hac vice*

Samuel Brooke (ASB-1172-L60B)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200

Facsimile: (334) 956-8481
Samuel.brooke@splcenter.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Meredith B. Stewart, do hereby certify that I served on this day, December 16, 2014, via ECF true and correct copies of the attached on counsel for all represented parties.


Dated:  December 16, 2014                    /s/ Meredith B. Stewart_____

# EXHIBIT A

OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

# APPLICATION
# FOR
# ALIEN EMPLOYMENT CERTIFICATION

**IMPORTANT:  READ CAREFULLY BEFORE COMPLETING THIS FORM**

PRINT legibly in ink or use a typewriter.  If you need more space to answer questions in this form, use a separate sheet.  Identify each answer with the number of the corresponding question.  SIGN AND DATE each sheet in original signature.

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

## PART A. OFFER OF EMPLOYMENT

1. Name of Alien        (Family name in capital letter, First, Middle, Maiden)

2. Present Address of Alien        (Number, Street, City and Town, State ZIP code or Province, Country)

3. Type of Visa        (If in U.S.)

The following information is submitted as an offer of employment.

4. Name of Employer        (Full name of Organization)

5. Telephone

6. Address        (Number, Street, City and Town, State ZIP code)

7. Address Where Alien Will Work        (if different from item 6)

| 8. Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule (Hourly) | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | a.m. / p.m. | a. Basic $ _____ per _____ | b. Overtime $ _____ per hour |

13. Describe Fully the job to be Performed        (Duties)

14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 13 above.

15. Other Special Requirements

| EDU-CATION (Enter number of years) | Grade School | High School | College | College Degree Required        (specify) |
|---|---|---|---|---|
| | | | | Major Field of Study |

| TRAIN-ING | No. Yrs. | No. Mos. | Type of Training |
|---|---|---|---|
| | | | |

| EXPERI-ENCE | Job Offered | | Related Occupation | | Related Occupation        (specify) |
|---|---|---|---|---|---|
| | Number | | | | |
| | Yrs. | Mos. | Yrs. | Mos. | |

16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor

17. Number of Employees Alien Will Supervise

◄ ENDORSEMENTS        (Make no entry in section - for Government use only)

| Date Forms Received | |
|---|---|
| L.O. | S.O. |
| R.O. | N.O. |
| Ind. Code | Occ. Code |
| Occ. Title | |

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

ETA 750 (Oct. 1979)

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local |
| | From | To | | |
| | | | | c. City and State |

**20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS   (Complete for Private Household ONLY)**

| a. Description of Residence | | b. No. Persons residing at Place of Employment | | | c. Will free board and private room not shared with any-one be provided? | ("X" one) |
|---|---|---|---|---|---|---|
| ("X" one) ☐ House ☐ Apartment | Number of Rooms | Adults | Children | Ages | | ☐ YES ☐ NO |
| | | BOYS | | | | |
| | | GIRLS | | | | |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS. (Specify Sources of Recruitment by Name)**

22. Applications require various types of documentation. Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

**23. EMPLOYER CERTIFICATIONS**

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a. I have enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:

(1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2) At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

**24. DECLARATIONS**

DECLARATION OF EMPLOYER ► Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE | DATE |
|---|---|
| NAME (Type or Print) | TITLE |

AUTHORIZATION OF AGENT OF EMPLOYER ► I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER | DATE |
|---|---|
| NAME OF AGENT (Type or Print) | ADDRESS OF AGENT (Number, Street, City, State, ZIP code) |

# EXHIBIT B

## FLSA CONSENT FORM / CONSENTIMIENTO PARA ACCION FLSA

I hereby give my consent to sue for wages that may be owed to me under the Fair

Labor Standards Act.  I hereby authorize my attorneys to represent me before any

court or agency on these claims.

NAME
_____

SIGNATURE
_____

DATE
_____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Por este medio doy mi consentimiento para que se haga demanda para pagos que

se me deben bajo la Ley de Normas Laborales Justas.  Autorizo que mis abogados

me representen ante cualquier corte o agencia tocante estos reclamos.

Leovardo Morales Inclan
NOMBRE
L - M I'
FIRMA
June 17, 2014
FECHA

## FLSA CONSENT FORM / CONSENTIMIENTO PARA ACCION FLSA

I hereby give my consent to sue for wages that may be owed to me under the Fair

Labor Standards Act.  I hereby authorize my attorneys to represent me before any

court or agency on these claims.

*Miguel Angel Fuentes Cordova*
NAME

*MAS*
SIGNATURE

*02/10/2014*
DATE

---

Por este medio doy mi consentimiento para que se haga demanda para pagos que

se me deben bajo la Ley de Normas Laborales Justas.  Autorizo que mis abogados

me representen ante cualquier corte o agencia tocante estos reclamos.

*Miguel Angel Fuentes Cordova*
NOMBRE

*MAS*
FIRMA

*02/10/2014*
FECHA