IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| MIGUEL ANGEL FUENTES CORDOVA and LEOBARDO MORALES INCLAN on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:14-cv-00462-WS-M |
| R & A OYSTERS, INC., RODNEY L. FOX, and ANN P. FOX, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR RULE 12(b)(6) MOTION TO DISMISS**

Defendants R&A Oysters, Inc., Rodney L. Fox, and Ann P. Fox (the "Defendants"), by and through their undersigned counsel, file this Memorandum in Support of their Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Counts II, III, IV, and VI of the Amended Complaint filed by Plaintiffs Miguel Angel Fuentes Cordova and Leobardo Morales Inclan, individually and on behalf of all others similarly situated (collectively, the "Plaintiffs").

**INTRODUCTION**

Defendant R&A Oysters, Inc. ("R&A") is an oyster processor and distributor with facilities located in Mobile County, Alabama. It employs numerous H-2B nonimmigrants from Mexico to "shuck" oysters at its facilities. Plaintiffs have alleged that R&A, and Mr. and Mrs. Fox through their alleged operation of R&A, violated the Fair Labor Standards Act

{1040980.1}

(FLSA), 29 U.S.C. § 201, *et seq.* (Count I), and the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. § 1801, *et seq.* (Count II), by failing to pay the Plaintiffs an amount above the required prevailing or federal minimum wage during the first work week of each Plaintiff. Under the same statutes, Plaintiffs also alleged that Defendants impermissibly retaliated against several of the Plaintiffs when it discharged them from employment at R&A on or about December 10, 2014 (Counts V and VI). In addition, Plaintiffs alleged causes of action for breach of contract (Count III) and as a third party beneficiary of a contract (Count IV).

Defendants now seek the dismissal of Counts II, III, IV, and VI, which would leave only the FLSA claims still pending before this Court. In short, AWPA only applies to agricultural workers, and oyster shuckers are **non**agricultural workers. This is apparent from the express language of AWPA, the legislative history of AWPA, FLSA, and other relevant statutes, and recent judicial decisions. The seafood industry, and oyster shuckers in particular, has never been considered agricultural in nature. As a result, AWPA is simply inapplicable in a lawsuit against an oyster processor.

Further, the breach of contract claim fails to state a claim for which relief can be granted because the law is clear that H-2B requirements imposed on employers by the U.S. Department of Labor do not constitute a contract between the employer and the government or between the employer and the H-2B nonimmigrant. While the Department of Labor has remedies against the employer for violations, there is no private right of action granted to the H-2B nonimmigrant. As a result, both Counts III and IV must be dismissed.

**ARGUMENT**

**I.    Standard of Review.**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when the claimant fails "to state a claim upon which relief can be granted." Thus, a complaint may be dismissed pursuant to Rule 12(b)(6) when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the plaintiff has shown enough facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts, excluding legal conclusions and "naked assertions," as true and view them in the light most favorable to the plaintiff. *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). The tenet that, on a motion to dismiss for failure to state a claim, a court must accept as true all of the allegations contained in a complaint, is inapplicable to legal conclusions. *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013); *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-1199 (11th Cir. 2012). Thus, a party's "obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[C]onclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." *Wood v. Briarwinds Condo. Ass'n Bd. of Dirs.*, 369 F. App'x 1, 2 (11th Cir. 2010) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

Dismissal pursuant to Rule 12(b)(6) is "appropriate 'when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *D.P. ex rel E.P. v. Sch. Bd.*, 483 F.3d 725, 728-29 (11th Cir. 2007) (quoting *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558 (*quoting* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 233 – 344 (3d ed. 2004)).

## II. Plaintiffs' Claims under AWPA Must Be Dismissed Because AWPA Does Not Apply to H-2B Nonimmigrants or Oyster Shuckers.

AWPA very clearly states that its "purpose . . . [is] to remove the restraints on commerce caused by activities detrimental to migrant and seasonal <u>agricultural workers</u> . . . " 29 U.S.C. § 1801 (emphasis added). Nothing within its text extends its protections or obligations to nonagricultural workers. And, as H-2B nonimmigrants, Plaintiffs are, by definition, <u>nonagricultural</u> workers:

> An H–2B classification applies to an alien who is coming temporarily to the United States to perform <u>nonagricultural</u> work of a temporary or seasonal nature . . .

8 C.F.R. § 214.2(h)(1)(ii)(D) (emphasis added). *See also Bayou Lawn & Landscape Servs. v. Sec'y of Lab.*, 713 F.3d 1080, 1083 (11th Cir. 2013) ("The Immigration and Nationality Act of 1952 . . . established a framework for the regulation of immigration that includes provisions for permanent and temporary foreign workers. In 1986, Congress amended the statute to provide for separate programs for agricultural and nonagricultural workers. <u>The H-2B program governs non-agricultural workers</u>.") (emphasis added) (internal citations omitted).

{1040980.1}                                       - 4 -

On its face, AWPA does not extend to the Plaintiffs.

A handful of courts have extended AWPA coverage to traditionally nonagricultural workers, including some H-2B workers, notwithstanding the definitional antagonism,[1] determining that the type of labor engaged in was, using a liberal interpretation, "agricultural" work. *Morante-Navarro v. T&Y Pine Straw, Inc.,* 350 F.3d 1163, 1172 (11th Cir. 2003) (pine straw); *Bresgal v. Brock*, 843 F.2d 1163, 1167 (9th Cir. 1988) (trees raised for crop); *Bracamontes v. Weyerhaeuser Co.*, 840 F.2d 271, 276 (5th Cir. 1988) (pine seedlings). But in these anomalous cases, the activities of the H-2B worker always "involved land-based, not sea-based, products." *Araiza-Calzada v. Webb's Seafood, Inc.*, Case No. 5:13-cv-00015-RS-CJK, 2014 WL 4452228, *9 (N.D. Fla. Sept. 10, 2014). *See also Morante-Navarro,* 350 F.3d at 1172; *Bresgal*, 843 F.2d at 1167; *Bracamontes*, 840 F.2d at 276. Thus, while these courts interpreted "agricultural" broadly, they did not rewrite the definition of "agricultural" to include a type of work (e.g., seafood processing) that had historically received disparate treatment.

In the present case, the Plaintiffs are oyster shuckers in the seafood industry, which is neither a category of work covered by AWPA nor one intended to be covered by Congress. Simply, Plaintiffs are nonagricultural workers and have no claim under AWPA as a matter of law.

### B. Oyster Shuckers Are Not Agricultural Workers within the Meaning of AWPA.

Oyster shucking is not an "agricultural" activity that fits within AWPA's definition of "agricultural." Under AWPA, the term "agricultural employment" means:

---

[1] Interestingly, nonimmigrants engaging in agricultural work are admitted under the H-2A program and <u>expressly excluded</u> from AWPA coverage. 29 U.S.C. § 1802(8)(B)(ii). Likely, Congress did not feel it needed to also expressly exclude H-2B nonimmigrants from AWPA because H-2B visas are reserved for <u>non</u>agricultural workers to whom AWPA, on its face, does not apply.

> employment in any service or activity included within the provisions of section 3(f) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(f)), or section 3121(g) of Title 26 and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage any agricultural or horticultural commodity in its unmanufactured state.

29 U.S.C. § 1802(3). So, employment is agricultural employment if it would be agricultural employment under the FLSA or the Internal Revenue Code or involves working with any agricultural or horticultural commodity in its unmanufactured state.

> The FLSA defines "agriculture" as follows:
>
> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). The FLSA definition leans heavily on usage of the word "farm," in all its variations, and the raising of livestock, bees, or poultry, among others. It does not include any description that would implicate the seafood industry or, more specifically, oyster shucking.

The I.R.S. definition of "agriculture" likewise provides no support for the inclusion of oyster shucking in "agricultural" work. It defines "agricultural labor" as all service performed:

> (1) <u>on a farm</u>, in the employ of any person, in connection with <u>cultivating the soil</u>, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife;

(2) in the employ of the owner or tenant or other operator <u>of a farm</u>, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, <u>if the major part of such service is performed on a farm</u>;

(3) in connection with the production or harvesting of any commodity defined as an agricultural commodity in section 15(g) of the Agricultural Marketing Act, as amended (12 U.S.C. 1141j), or in connection with the ginning of cotton, or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, <u>used exclusively for supplying and storing water for farming purposes</u>;

(4)    (A) <u>in the employ of the operator of a farm</u> in handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, in its unmanufactured state, any agricultural or horticultural commodity; but only if such operator produced more than one-half of the commodity with respect to which such service is performed;

(B) <u>in the employ of a group of operators of farms</u> (other than a cooperative organization) in the performance of service described in subparagraph (A), but only if such operators produced all of the commodity with respect to which such service is performed. For purposes of this subparagraph, any unincorporated group of operators shall be deemed a cooperative organization if the number of operators comprising such group is more than 20 at any time during the calendar year in which such service is performed;

(C) the provisions of subparagraphs (A) and (B) shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption; or

(5) <u>on a farm</u> operated for profit if such service is not in the course of the employer's trade or business.

As used in this subsection, the term "farm" includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards.

26 U.S.C. § 3121(g) (emphasis added). Once again, nothing in the definition indicates that seafood or oyster shucking would be considered agriculture.

In addition, the FLSA regulations provide further color as to the meaning of "agricultural or horticultural commodity":

> [C]ommodities resulting from the application of agricultural or horticultural techniques. Insofar as the term refers to products of the soil, it means commodities that are planted and cultivated by man. Among such commodities are the following: Grains, forage crops, fruits, vegetables, nuts, sugar crops, fiber crops, tobacco, and nursery products. Thus, employees engaged in growing wheat, corn, hay, onions, carrots, sugar cane, seed, or any other agricultural or horticultural commodity are engaged in "agriculture." In addition to such products of the soil, however, the term includes domesticated animals and some of their products such as milk, wool, eggs, and honey. The term does not include commodities produced by industrial techniques, by exploitation of mineral wealth or other natural resources, or by uncultivated natural growth. For example, peat humus or peat moss is not an agricultural commodity.

29 C.F.R. § 780.112. Unsurprisingly, there is no mention of seafood, oyster shucking, or any activity that is remotely close to oyster shucking. Rather, the focus is on what one would commonly refer to as "traditional farming" of wheat, corn, hay, and other "products of the soil." *Id.*

Plaintiffs bear the burden of establishing that AWPA is applicable in this case, but the Complaint, as amended, is bereft of any facts that would implicate AWPA. *Araiza-Calzada*, 2014 WL 4452228, *4; *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (analogous FLSA case). Rather, Plaintiffs merely state, in a conclusory fashion, that they "were migrant agricultural workers within the meaning of AWPA" because "they were employed in agricultural employment of a seasonal or temporary nature handling and processing oysters, an agricultural commodity, in their unmanufactured state . . . " (Am. Compl., ¶ 9). But, oysters are not an agricultural commodity, as indicated by the above

definitions, and conclusory allegations in a complaint "are not entitled to an assumption of the truth." *Iqbal*, 556 U.S. at 677-683 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to an assumption of the truth."). In short, Plaintiffs have failed to meet their burden, and all claims under AWPA must be dismissed.

In addition to the plain language of the relevant statues, a federal district court in the Eleventh Circuit recently examined nearly this exact fact pattern and legal arguments and determined, in a thoroughly researched and very well-reasoned opinion, that AWPA does not apply to oyster shuckers. *Araiza-Calzada*, 2014 WL 4452228. In *Araiza-Calzada*, a group of H-2B oyster shuckers alleged that Webb's Seafood violated AWPA and FLSA and breached its employment contract with the employees. *Id.* at *1. The sole question before the court was whether the oyster shuckers were entitled to AWPA protections, which the court answered in the negative.[2] *Id.* at *5.

The plaintiffs in *Araiza-Calzada* conceded that the FLSA and IRS definitions of agriculture were limited to work performed "on a farm," so the court examined whether oysters were an agricultural commodity that falls under the third, broad definition contained in 29 U.S.C. § 1802(3) concerning "the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage any agricultural or horticultural

---

[2] Although *Araiza-Calzada* is currently on appeal before the U.S. Court of Appeals for the Eleventh Circuit (Appeal No. 14-14579-C), Defendants note that it was decided on September 10, 2014, a month before this suit was filed. Interestingly, in addition to the present lawsuit, Plaintiffs' counsel, The Southern Poverty Law Center, filed another complaint in the U.S. District Court for the Eastern District of Virginia on September 30, 2014, against yet another H-2B employer of oyster shuckers, advancing the same AWPA argument put forth and rejected in *Araiza-Calzada*. *Bojorquez-Moreno v. Shores & Ruark Seafood Co.*, Civ. Action No. 3:14cv670 (E.D. Va. Sept. 30, 2014). That case remains pending on a motion for judgment on the pleadings filed by the employer.

{1040980.1}                                    - 9 -

commodity in its unmanufactured state." The court carefully tracked the legislative history of AWPA and its predecessor statute, the Farm Labor Contractor Registration Act of 1963 (the "FLCRA"). It noted that AWPA was intended to broaden the definition of "agricultural employment" to cover activities that previously were not covered by the FLCRA, but that Congress "did not intend to extend the law to every worker under the sun." *Id.*

In reaching its conclusion that oyster shucking, and seafood in general, did not constitute agricultural employment under AWPA, the court noted that Congress repeatedly treated traditional agriculture and the seafood industry differently. *Id.* at *4-7. They each had their own FLSA exemption, *compare* 29 U.S.C. § 213(a)(6) (traditional farming) *with* 29 U.S.C. § 213(a)(5) (seafood), and distinction in the Internal Revenue Code, *compare* 26 U.S.C. § 3306(k) (traditional farming) *with* 26 U.S.C. § 3306(c)(17) ("farming of any kind of fish . . . "). And, when Congress amended the FLCRA in 1974, it indicated that "Agricultural Employees" were treated differently than "Seafood Canning and Processing." *Id.* at *6. In essence, Congress appears to have always treated traditional agriculture as different from seafood. In fact, as the *Araiza-Calzada* court noted:

> The conscious decision to separately define seafood from 'agriculture' even when [Congress] had ample opportunity to include it within varying broad definitions of agriculture is powerful evidence that Congress did not consider seafood to be a part of what it considered 'agriculture,' but rather that seafood was something entirely different.

*Id.* at *7.

Moreover, the *Araiza-Calzada* court noted that under the *Chevron* principle, "[w]here a statute is ambiguous, courts should afford great deference to executive agency interpretations." *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). The U.S. Department of Labor, with whom Congress placed the authority to

enforce AWPA and FLSA, has historically treated seafood and agriculture as being mutually exclusive. *Id.* at *8. As recently as 2004, the Department of Labor expressly noted that "[t]he activities engaged in by crabmeat pickers and packers do not constitute 'farming,' nor is the work in a seafood processing plant performed 'by a farmer or on a farm.'" *Id.* (quoting FLSA2004-1, Wage & Hour Div., 2004 WL 769500 (Feb. 5, 2004). As a result of its analysis, the *Araiza-Calzada* court concluded:

> The DOL has always interpreted [the word "agricultural"] in the FLSA context to exclude seafood, and it has never given any indication that the word in the AWPA should include seafood.

*Id.*

In light of *Araiza-Calzada* and the extensive analysis underlying its holding, which is on point with the analysis to be conducted in this case, AWPA is inapplicable in this case. It simply does not apply to Plaintiffs, who are H-2B nonimmigrant, nonagricultural workers. As a result, Count II (AWPA) and Count IV (AWPA – Retaliation) must be dismissed for failure to state a claim upon which relief can be granted.

## II. Plaintiffs' Breach of Contract Claim Must Be Dismissed Because It Fails to State a Claim Upon Which Relief Can Be Granted.

In the Amended Complaint, Plaintiffs claim that Defendants breached their employment contracts with the Plaintiffs, which allegedly consisted of the terms and conditions of the temporary labor certification (ETA Form 9142B), its accompanying attestations, and the law and regulations applicable to the H-2B program. However, no employment contract exists *at common law* between H-2B workers and their employer. Rather, any such employment contract would be a function of AWPA, which for the reasons noted above, is inapplicable.

While H-2A nonimmigrants do have the benefit of an employment contract with their employer, which is expressly set forth in the H-2A regulations, H-2B nonimmigrants do not. Courts have acknowledged the significance of this difference:

> While the court acknowledges the shared purpose and similar application process of the H–2A and H–2B programs, the contract issue is a noteworthy difference between the H–2A and H–2B regulations. In particular, while federal regulations governing the H–2A program provide that "[i]n the absence of a separate, written work contract entered into between the [H–2A] employer and the worker, the required terms of the job order and application . . . shall be the work contract," 20 C.F.R. § 655.102(b)(14); *see* 29 C.F.R. § 501.10(d) (defining an H–2A work contract), no similar provision exists under the H–2B regulations. In fact, under the H–2B program, foreign workers "are guaranteed only that their pay will be consistent with the prevailing wage for the assigned locality. An H–2B worker . . . has *no employment contract* or work guarantee." *Olvera–Morales v. Inter'l Labor Mgmt. Corp.,* 246 F.R.D. 250, 253 (M.D.N.C. 2007) (emphasis added).

*Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 716-717 (E.D.N.C. 2009). In short, participation in the H-2B program does not create an employment contract at common law between employer and employee.

In reality, Plaintiffs' allegations are merely an effort to permit them to enforce alleged violations of the H-2B program by Defendants. Of course, the Department of Labor is charged with enforcing the provisions of the H-2B program, and no private right of action exists for H-2B employees. *See Nieto-Santos v. Fletcher Farms*, 743 F.2d 638, 641 (9th Cir. 1984) ("[T]here is no evidence that Congress intended to permit private enforcement of the H-2 regulations . . . [and] there is nothing in the underlying purposes of the legislative scheme suggesting that it would be appropriate to imply a privately enforceable remedy for alien workers."); *U.S. v. Richard Dattner Architects*, 972 F. Supp. 738, 746 (S.D.N.Y. 1997) (holding that temporary workers had no standing to assert a claim under the INA because the statutory language focused on the government's duties and did not indicate any

Congressional intent to create a remedy for third parties). As no contract exists at common law, Plaintiffs' claim for breach of contract must be dismissed.

### III. Plaintiffs' Third Party Beneficiary Claim Must Be Dismissed Because It Fails to State a Claim Upon Which Relief Can Be Granted.

As demonstrated above, no employment contract exists between the parties. As a result, it is impossible for Plaintiffs to claim that they were third party beneficiaries of said contract or any alleged contract between Defendants and the U.S. Department of Labor. Quite simply, visa applications, which are discretionary grants of immigration status, cannot create a legally cognizable contract for several reasons:

> Aside from the problematic nature of treating applications for discretionary grants of immigration status or approvals thereof as contracts, <u>it is apparent that [the employer's] actions cannot qualify as legally cognizable consideration underlying its "offer" such that a contract could be formed between it and the government</u>. A party's agreement to do or refrain from doing something that it is already legally obligated to do or refrain from doing is not consideration. Like all legal entities, employers must comply with the law at all times. Any promise to the government that one will not behave in an illegal manner triggers no detriment to the promising party. Thus, it is not sufficient to constitute contractual consideration. [The employer] could not file a visa petition saying anything but that it would comply with statutes controlling the employment of a nonimmigrant employee such as [plaintiff]. <u>In short, the visa proceedings did not give rise to any contract for [plaintiff's] benefit that could later be breached if his employer did not employ him as stated in the application.</u>

*Rao v. Covansys Corp.*, No. 06 C 5451, 2007 WL 3232492, *4 (N.D. Ill. Nov. 1, 2007) (internal citations omitted) (emphasis added). *See also Brug v. Nat'l Coalition for the Homeless*, 45 F. Supp. 2d 33, 41-42 (D.D.C. 1999) (noting that plaintiff cannot circumvent the lack of a private right of action by arguing that he is a third-party beneficiary to a government contract); *Shekoyan v. Sibley Inter'l Corp.*, 217 F. Supp. 2d 59, 70 n.10 (D.D.C. 2002) ("[C]ourts have also

rejected third party beneficiary claims pursuant to agreements between the government and contractors as an attempt to circumvent the lack of private cause of action."). If there cannot be a contract between Defendants and the government, then there can be no basis for Plaintiffs' claim as a third party beneficiary of said alleged contract.[3] As a result, this cause of action must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Counts II, III, IV, and VI of Plaintiffs' Amended Complaint.

*s/ Rick A. La Trace*
Rick A. La Trace (LATRR5429)
Alan C. Christian (CHRIA3917)
Celia J. Collins (COLLC1368)
Spencer H. Larche (LARCS1011)
Attorneys for Defendants
Post Office Box 1988
Mobile, Alabama 36633
(251) 432-7682; fax (251) 432-2800
Email: ral@johnstoneadams.com
acc@johnstoneadams.com
cjc@johnstoneadams.com
shl@johnstoneadams.com

OF COUNSEL:

JOHNSTONE ADAMS, LLC

---

[3] Alabama law likewise holds that an agreement to uphold existing legal obligations lacks valid consideration. *Griffin v. Hardin*, 456 So. 2d 1113, 1116 (Ala. Civ. App. 1984) (quoting *Hill v. Hill,* 115 So. 258 (Ala. 1928) ("Where a party is under a duty created or imposed by law to do what he does or promises to do, his act or promise is clearly of no value and is not sufficient consideration for a promise given in return.")); *S. & N.A.R. Co. v. Highland Ave. & B.R. Co.*, 24 So. 114, 120-121 (Ala. 1898).

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 9th day of January, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Samuel Brooke, Esq.
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
samuel.brooke@splcenter.org

Meredith B. Stewart, Esq.
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue, Suite 505
New Orleans, LA 70130
meredith.stewart@splcenter.org

Eunice Hyunhye Cho, Esq.
James M. Knoepp, Esq.
SOUTHERN POVERTY LAW CENTER
1989 College Avenue NE
Atlanta, GA 30317
eunice.cho@splcenter.org
jim.knoepp@splcenter.org

                                                *s/ Rick A. La Trace*