IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MIGUEL ANGEL FUENTES CORDOVA, et al., etc., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 14-0462-WS-M ) |
| R & A OYSTERS, INC., et al., | ) ) |
| Defendants. | ) ) |

### ORDER

This matter is before the Court on the plaintiffs' motion for a protective order. (Doc. 69). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 69, 72, 75), and the motion is ripe for resolution.

### BACKGROUND

This FLSA action has been conditionally certified as a collective action, with the conditionally certified class consisting of all non-supervisory hourly workers admitted under the H-2B temporary foreign worker visa program and employed by the defendant at any point since October 2011. (Doc. 44 at 3, 5). The potential plaintiffs work or have worked as oyster shuckers at the defendant's oyster processing facility in Mobile County and are Mexican citizens who permanently reside in rural areas of Mexico. The defendants are Rodney and Ann Fox and their company, R&A Oysters, Inc.

The plaintiffs believe the defendants have engaged in coercive communications with several opt-in plaintiffs, two of whom have filed notices of the withdrawal of their consent to join the collective action. (Doc. 66). A third has submitted a withdrawal letter to plaintiffs' counsel. (Doc. 69-2 at 3).

The plaintiffs seek the following relief: (1) discovery regarding the circumstances surrounding the requests to withdraw; (2) written notice to all existing and potential plaintiffs advising that the defendants cannot condition future employment on non-participation in this lawsuit; and (3) an instruction to certain present and past employees and agents of the defendants regarding the FLSA's anti-retaliation provisions and this order. (Doc. 69 at 1-2).

## DISCUSSION

As this Court has noted, in appropriate circumstances it has authority to limit communication between a defendant employer and existing and potential plaintiffs in an FLSA collective action. *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1226-27 (S.D. Ala. 2008). The standards are the same as those applicable in the class action context, *id.*, since "[t]he same justifications [for judicial oversight over communications] apply in the context of" a collective action as a class action. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

Before relief may be ordered, there must first be made a "specific record showing by the moving party of the particular abuses by which it is threatened." *Gulf Oil v. Bernard*, 452 U.S.89, 102 (1981) (internal quotes omitted). To satisfy *Bernard*, "[t]wo kinds of proof are required." *Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.*, 214 F.R.D. 696, 697 (S.D. Ala. 2003). "First, the movant must show that a particular form of communication has occurred or is threatened to occur. Second, the movant must show that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." *Id*. at 697-98. "Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation …." *Id*. at 698.

The parties have submitted affidavits, declarations and other evidence in support of their respective positions. Neither side requests an evidentiary hearing; on the contrary, the defendants insist the Court should resolve the instant motion

on the existing record. (Doc. 72 at 9). Therefore, and because the proper resolution of the instant motion is clear on the existing record, no hearing will be held. *See Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373 (S.D. Ga. 2009) (resolving a similar motion based on affidavits). The Court makes the following determinations based on the evidentiary materials submitted by the parties.

Angel Santos Wilson is an oyster shucker for the defendants but is not employed under the H-2B program. He is married to Nanette Wilson, who is employed by the defendants in the office as executive secretary and who is in charge of making the annual list of those H-2B workers the defendants will invite to return to work the next season. Angel is a frequent conveyor of news and messages from the office to the oyster shuckers.

In May 2015, Angel told several H-2B workers on the defendants' premises that defendant Rodney Fox ("Rodney") wanted them to know they could return to work under the H-2B program if they withdrew from this lawsuit. One of those present for this conversation is among the three that have since requested to withdraw. Another opt-in plaintiff heard co-workers say the defendants were offering future work in exchange for withdrawing from the lawsuit, and Angel confirmed to him that this was correct.

Angel denies he told anyone that they would have to ask Rodney for "forgiveness" or that Rodney had "promised" work for anyone who withdrew from the lawsuit, but he does not deny making statements indicating that the defendants were conditioning future work on withdrawal from the lawsuit. For these and other reasons, the Court finds on this record that the communications asserted by the plaintiffs' declarants did occur.

Rodney denies that he spoke directly with any H-2B employees or that he "directed" Angel to do so, but he does not deny suggesting that Angel do so. Rodney denies that he and Angel speak a common language well enough for him to suggest what Angel should say, but he does not deny that Nanette could relay

his position to Angel.[1]  And although Rodney denies that Angel had any authority, actual or apparent, to speak for the defendants, he does not deny that Angel often relates information from the office to the H-2B workers.  Nor does Rodney deny that Angel accurately related his (Rodney's) position to the H-2B workers.  For these and other reasons,[2] the Court finds on this record that Angel spoke with at least the tacit approval of the defendants.[3]

As of June 24, 2015, there were only four plaintiffs present at the defendant's facility.  Three of them, almost immediately after the May communications discussed above, approached Nanette about how to withdraw from the lawsuit, and each then took steps to withdraw their consent to participate in this action.  In contrast, out of approximately 20 plaintiffs not onsite (who had presumably returned to Mexico), none has sought to withdraw consent.  And the plaintiff's two declarants, who returned to Mexico in May after hearing Angel's comments, have expressed concern that remaining in the lawsuit will cost them and other plaintiffs – all with bleak employment prospects at home – future employment with the defendant.  These facts underscore the plainly coercive aspect of communications directly linking future employment under the foreign worker visa program with (non)participation in the lawsuit.  *Accord Ojeda-*

---

[1] Rodney denies "instruct[ing]" Nanette to convey any message to the H-2B workers directly or through Angel, but again he does not deny suggesting it.

[2] Almost immediately after Angel's comments, the girlfriend of one plaintiff asked Rodney how her boyfriend could get out of the lawsuit, and Rodney advised that he should send a letter by certified mail to plaintiff's counsel.  That is, Rodney did not suggest that the plaintiff discuss the issue with his lawyer but instead told him to request withdrawal, and in a formal, final manner.  This may not be improper on its own, but it does bolster the impression that Angel's comments were part of a purposeful effort by the defendants to pry the plaintiffs out of their lawsuit.

[3] The defendants deny that the *Bernard* test can be satisfied because none of them spoke directly with the H-2B workers.  (Doc. 72 at 5).  But they offer no authority for the improbable proposition that a defendant can sanitize an improper communication by having it relayed – with full attribution – by a non-defendant.

4

*Sanchez*, 600 F. Supp. 2d at 1379 (statements that H-2A class members "would not be rehired if they participated in litigation … could … be characterized as abusive and threatening to the litigation").[4]

"Abusive practices that have been considered sufficient to warrant a protective order include … communications that undermine cooperation with or confidence in class counsel." *Cox Nuclear Medicine*, 214 F.R.D. at 697.  In their reply brief, the plaintiffs argue that the role of Rodney in advising how to withdraw from the lawsuit, and Nanette's conduct in drafting the withdrawal letters, addressing them and having them notarized, is independently objectionable as undermining confidence in class counsel.  (Doc. 75 at 4).  No such argument appears in the plaintiffs' principal brief, even though it was fully available to them.  "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining the underlying rationale).  The plaintiffs identify no reason to depart from this well-established rule, and the Court declines to do so.

Upon finding the occurrence of abusive communications, the Court "should [prepare] a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Bernard*, 452 U.S. at 102.  The Court concludes that the plaintiffs' proposed relief sweeps more broadly than necessary to remedy the wrong and ensure it is not repeated.

The plaintiffs first seek "a written notice mutually agreed upon by the Parties to all … Opt-in Plaintiffs and putative class members informing the workers that Defendants cannot condition future employment on participation in this lawsuit."  (Doc. 69 at 1).  The Court agrees that such a notice is a reasonable – indeed, modest – request, since such a notice merely counteracts the contrary

---

[4] The defendants say any coercive tendency dissolves when "relationships and bonds of friendship" are considered.  (Doc. 72 at 5).  But a message from the boss that only those who quit the lawsuit will find future employment does not become less coercive simply because the messenger is a co-worker.

impression resulting from the defendants' improper conduct.  However, the Court agrees with the defendants that only those plaintiffs and potential plaintiffs exposed to the defendants' conduct need receive such notice, since only they could have thereby formed a misimpression of the defendants' authority to condition employment on withdrawal from the lawsuit.  (Doc. 72 at 8).[5]  The Court identifies this universe as those plaintiffs and potential opt-in plaintiffs who were on the defendant's premises at any time between May 1, 2015 and the date of this order, whether or not they are still onsite or stateside.[6]

The plaintiffs next seek an order that the defendants "immediately instruct their supervisory employees and all other employees and agents who might have contact with plaintiffs and putative class members of the prohibitions of the Court's protective order and the anti-retaliation provisions of" the FLSA.  (Doc. 69 at 2).  The defendants object that this is unnecessary because some employees "have no reason or desire to be involved in this lawsuit in any way."  (Doc. 72 at 9).  The defendants do not suggest it will be difficult to provide such instruction and, given their track record, it is appropriate that anyone in a position to repeat or amplify Angel's comments to the plaintiffs receive such instruction.[7]

---

[5] The plaintiffs offer no evidence – not even from their declarants, both of whom returned to Mexico in May – that the defendants' comments have been repeated by them or others in Mexico.  They note that no one opted in after Angel's comments in early May, but this does not suggest that his comments are known in Mexico, especially since no one opted in after March 19, either.  (Doc. 56).

[6] Angel's comments occurred in early May.  Any H-2B worker onsite at that time (the defendants indicate there were fewer than twelve, all living together on campus) either heard him make the comments or likely heard of the comments secondhand, as did one of the plaintiffs' declarants.  The same is true of any H-2B workers who have arrived onsite since early May.

[7] The defendants express no objection to the plaintiffs' definition of "employees and agents" as "encompass[ing] all of Defendants' current employees and agents, and all persons who have been employees or agents of Defendants and over who [sic] Defendants might continue to exercise influence or control, notwithstanding whether such persons are presently employed or engaged."  (Doc. 69 at 2 n.1).  Accordingly, that definition prevails for purposes of this order.

Finally, the plaintiffs seek "expedited discovery on the circumstances leading up to the requested withdrawal of three opt-in plaintiffs," including the depositions of Rodney, Nanette and Angel. (Doc. 69 at 2). This is not for the purpose of pursuing sanctions or other relief, (Doc. 75 at 8), but as a predicate to "submit[ting] a fully supported motion to dismiss these Plaintiffs." (*Id*. at 9). The plaintiffs apparently believe they are required by previous Court order to submit such a fully supported motion. (Doc. 69-1 at 7). They ask the Court to "stay dismissal" of these plaintiffs pending completion of such discovery. (Doc. 69 at 1).

When the plaintiffs filed a notice that two plaintiffs had expressed their wish to withdraw their consent, (Doc. 66), the Court advised the plaintiffs that termination of party status requires a motion, not mere notice. (Doc. 67). While the Court instructed the plaintiffs to file a fully supported motion "[i]f the[y] intend to seek the dismissal of the two plaintiffs identified in their notice," (*id*.), the Court did not order the plaintiffs to file such a motion even if they do not seek such relief. If the plaintiffs do not desire to file such a motion, there can be no need for the requested discovery as a predicate to filing such a motion.

Moreover, the plaintiffs seek the requested depositions in order to "fully understand the circumstances surrounding why three Opt-in Plaintiffs are now seeking dismissal from the lawsuit." (Doc. 75 at 9). The question that concerns the plaintiffs is whether these three plaintiffs desire to withdraw consent because they fear they will lose future employment unless they do so (as Angel's comments indicated). But the only persons who know the answer to that question are the three plaintiffs themselves, not Rodney, Nanette or Angel. The Court will not order discovery that cannot answer the question posed.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for protective order is **granted in part**. The defendants are **ordered** to provide to all H-2B workers that

were present on the defendants' premises at any time on or after May 1, 2015 a written notice, mutually agreed upon by the parties, informing the workers that the defendants cannot condition future employment on participation in this lawsuit, with such notice to be served on each recipient on or before **August 6, 2015**. The defendants are further **ordered** to instruct their supervisory employees and all other employees and agents (as defined in note 7, *supra*) who might have contact with the plaintiffs and putative class members of the prohibitions of this order and the anti-retaliation provisions of the FLSA, such instruction to be accomplished on or before **July 31, 2015**. To the extent the plaintiffs seek other or additional relief, their motion is **denied**.

DONE and ORDERED this 27th day of July, 2015.

> s/ WILLIAM H. STEELE
> CHIEF UNITED STATES DISTRICT JUDGE