IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MIGUEL ANGEL FUENTES CORDOVA, et al., etc., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 14-0462-WS-M ) |
| R & A OYSTERS, INC., et al., | ) ) |
| Defendants. | ) ) |

ORDER

This matter is before the Court on the defendants' motion for judgment on the pleadings. (Doc. 95). The parties have filed briefs in support of their respective positions, (Docs. 96, 99, 100, 103), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

BACKGROUND

According to the amended complaint, (Doc. 20), the plaintiffs are migrant workers admitted to work in the United States under the H-2B temporary foreign worker visa program. The plaintiffs worked for the entity defendant ("R&A") and the individual defendants at various times between 2008 and 2014, performing activities related to oyster processing.

Count I of the amended complaint alleges minimum wage violations of the Fair Labor Standards Act ("FLSA"). Count V alleges retaliation in violation of the FLSA. Counts II and VI allege violations of the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"). Count III asserts a claim for breach of a contract between the defendants and the plaintiffs, while Count IV asserts a claim for breach of a contract between the defendants and the Department

of Labor ("DOL").  By previous order, the Court dismissed Counts II, IV and VI. On the instant motion, the defendants seek dismissal of Counts III and V.

## DISCUSSION

"Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. District Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010) (internal quotes omitted).  "We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Id*.  The Court "need not accept as true, however, conclusory legal allegations made in the complaint." *Andrx Pharmaceuticals, Inc. v. Elan Corp.*, 421 F.3d 1227, 1230 n.1 (11th Cir. 2005).  "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

### I. Breach of Contract.

By regulation, employers employing H-2B workers must pay such workers at least the federal minimum wage or the "prevailing wage" as determined by DOL.  20 C.F.R. § 655.20.  In support of its annual applications to DOL for temporary employment certification to hire H-2B workers, R&A certified that it would do so.  The plaintiffs assert that these certifications, attestations and regulatory requirements created an offer of employment, which they accepted by traveling to the United States and performing services.  They allege that the defendants breached this contract by compensating them below the federal minimum wage and prevailing wage. (Doc. 20 at 21-22; Doc. 99 at 5-6).  The

defendants respond that the alleged contract is not supported by legally sufficient consideration. (Doc. 96 at 2, 4).[1]

Count III is brought pursuant to Alabama law. (Doc. 20 at 1). The defendants' sole argument is that "Alabama law clearly holds that a promise to do that which one is already legally obligated to do cannot constitute valid consideration for a contract." (Doc. 96 at 2). This appears to be a correct statement of the law. *E.g., Mobile Turnkey Housing, Inc. v. Ceafco, Inc.*, 321 So. 2d 186, 190 (Ala. 1975) ("But where one party refuses to do the work, which his contract requires him to do, … unless he is paid more, and the other promises to pay more, the original contract still remaining subsisting, we consider it merely a promise to pay for what he was *already obliged* to do, and a nudum pactum ….") (emphasis added, internal quotes omitted); *Little v. Redditt*, 88 So. 2d 354, 357 (Ala. 1956) ("It is an established principle that the doing or undertaking to do only that which one is *already under a legal obligation* to do by his contract is no consideration for the secondary, subsequent, or new agreement.") (emphasis added, internal quotes omitted); *Griffin v. Hardin*, 456 So. 2d 1113, 1116 (Ala. Civ. App. 1984) ("A promise to do what one is *already under a legal obligation* to

---

[1] The plaintiffs describe their arrangement with the defendants as a "unilateral employment contract." (Doc. 99 at 5). The defendants in their reply brief object that the amended complaint does not allege such a contract. (Doc. 103 at 4-5 & 4 n.1). The defendants' point is obscure, but they appear to believe their consideration argument does not fare as well in the context of a unilateral employment contract. The Court does not see the connection.

At any rate, the defendants have failed to demonstrate that the amended complaint rules out a unilateral employment contract. They seize on the pleading's allegation that the certifications and so forth "constituted the employment contracts," (Doc. 20 at 21), and its failure to expressly "allege Defendants made any additional offer," (Doc. 103 at 4), but an allegation of what constituted the contract does not of itself negate an offer of such terms to the plaintiffs or an acceptance of them by performance. Moreover, any argument that the amended complaint fails to allege adequately the elements of a claim for breach of contract must be made by separate motion, not in a reply brief on a motion seeking dismissal solely on the grounds the contract is unsupported by legally sufficient consideration. *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 n.8 (S.D. Ala. 2012) (citing cases and explaining rationale).

3

do is not a sufficient consideration for another contract.") (emphasis added); *Gloor v. BancorpSouth Bank*, 925 So. 2d 984, 992 (Ala. Civ. App. 1992) (quoting *Griffin*).

Applying the principle to this case, the defendants argue that the alleged promise to pay the plaintiffs at least the higher of the prevailing or federal minimum wage "is an obligation already imposed on R&A by law." (Doc. 96 at 4). The plaintiffs respond that "already" in the context of Alabama's consideration jurisprudence means not simply that a legal obligation is already on the books somewhere but that the obligation is already and presently enforceable by the promisee against the promisor. (Doc. 99 at 6-8). If the plaintiffs' argument is correct, the defendants' motion must fail, because the plaintiffs could not have legally enforced the alleged offer to pay them a particular wage before they accepted the offer so as to form a contract.

The Alabama appellate courts appear not to have considered this question; in all the Alabama cases cited by the Court and the parties, the promisor was already subject to a presently enforceable obligation (by virtue of an existing contract, an existing judgment, or a statutory command) to pay or do what it offered to pay or do, so the plaintiffs' proposed distinction did not come into play. But the plaintiffs do cite one case that has addressed the precise issue presented here and resolved it favorably to the plaintiffs.

In *Moodie v. Kiawah Island Inn Co.*, ___ F. Supp. 3d ___, 2015 WL 5037038 (D.S.C. 2015), the plaintiffs, as here, were H-2B workers who alleged the defendant breached a contract to pay them the prevailing wage. The defendant, as here, argued that any such contract failed for lack of consideration because the defendant was already legally obligated by regulation to pay the prevailing wage. *Id*. at *12. The *Moodie* Court, construing South Carolina authority apparently indistinguishable from the Alabama authority on which the defendants rely, concluded that the defendant "misunderstands this long-standing doctrine of contract law," which it explained as follows:

4

> In other words, if a party is legally obligated to do something **prior to entering into the contract**, a promise to perform that legal obligation is not consideration for the contract. …
>
> Here, Defendant is not under any **prior** obligation to pay Plaintiffs anything and, thus, not "already legally bound" to pay Plaintiffs the prevailing wage. Instead, the H-2B regulations set the minimum consideration that Defendant must offer for this specific type of employment contract. It is a contingent legal obligation, dependant [sic] on Defendant entering into employment contracts with H-2B workers. This obligation arose with the contract ….

*Id*. at \*12-13 (emphasis in original).

The defendants make no effort to distinguish *Moodie* or to challenge its legal reasoning; on the contrary, they concede that it "merit[s] consideration." (Doc. 103 at 3). The defendants believe, however, that *Moodie*'s persuasive value is outweighed by that of two other guest worker cases. The Court disagrees. Neither *Bojorquez-Moreno v. Shores & Ruark Seafood Co.*, 92 F. Supp. 3d 459, 468 (E.D. Va. 2015), nor *Rao v. Covansys Corp.*, 2007 WL 3232492 at \*4 (N.D. Ill. 2007), considered the distinction articulated in *Moodie*, so the Court finds them less than compelling.

"It is a basic principle that justice is not served when somebody gets something for nothing …." *Lake Martin/Alabama Power Licensee Association, Inc. v. Alabama Power Co.*, 601 So. 2d 942, 944 (Ala. 1992) (internal quotes omitted).[2] The requirement of mutual consideration serves this principle, because it ensures that both sides receive something for something, not something for nothing. Under the plaintiffs' allegations, both they and the defendants received something for something: the defendants received labor (or a promise of such labor), and the plaintiffs received wages for their labor (or a promise of such wages). Until the moment a contract was formed by acceptance of an offer, the

---

[2] *Accord York Manufacturing Co. v. Bessemer Ice Manufacturing & Storage Co.*, 20 So. 13 (Ala. 1896) (one who agrees to add value to another's property, but who instead decreases its value, "is entitled to nothing. To hold otherwise would require the party to pay something for nothing."); *Alabama & Florida Railroad Co. v. Burkett*, 46 Ala. 569, 571 (Ala. 1871) ("The law does not allow something for nothing.").

5

defendants were not entitled to such labor and the plaintiffs were not entitled to such compensation.  This mutual exchange of promises to bestow benefits on the other gave each side something it had not possessed before that instant and so provided legally sufficient consideration.³  Federal law may have dictated how much compensation the defendants must pay should they contract with the plaintiffs, but it did not dictate that the defendants must pay the plaintiffs such sums even if they never hired the plaintiffs.

The Court's role in this diversity case, in the absence of an Alabama Supreme Court decision resolving the question, is to "anticipate how the Supreme Court would decide this case." *State Farm Mutual Automobile Insurance Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011).  The Court concludes that the Alabama Supreme Court would, consistently with *Moodie*, limit the principle for which the defendants contend to situations in which the promisor's consideration, at the time is it offered, is already an obligation owed by the promisor to the promisee and presently enforceable against the promisor by the promisee.⁴  Since that is not the situation presented here, the defendants' argument fails.

---

³ "It is generally stated that in order to constitute consideration for a promise, there must have been an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." *Kelsoe v. International Wood Products, Inc.*, 588 So. 2d 877, 878 (Ala. 1991).

⁴ The defendants suggest the Court should or must accept their position because it did so previously in granting their motion to dismiss Count IV; indeed, they stress this point no fewer than eight times in their reply brief.  (Doc. 103 at 2-7).  The plaintiffs respond that "whether a promise to the *government* not to violate the law is valid consideration for a contract with the government is irrelevant to the validity of Plaintiffs' employment contract with Defendants." (Doc. 99 at 8 (emphasis in original)).  In addition, the Court's prior ruling was based on extremely limited briefing and without citation to *Moodie* (which had not yet been decided), and it in nowise binds the Court on the instant motion.  *Cf. Hawk v. Klaetsch*, 2012 WL 6569286 at *3 (S.D. Ala. 2012) (law-of-the-case doctrine does not apply to a trial court's own rulings).

**II. FLSA Retaliation.**

According to the amended complaint, the defendants promised to sponsor many of the plaintiffs for H-2B visas for the 2014-2015 season (as they had done in previous years) but, shortly after being served with process in this lawsuit, they revoked their offer to sponsor seven plaintiffs ("the retaliation plaintiffs") who had not yet received their visas. (Doc. 20 at 23-24). The defendants raise two arguments in opposition to this claim.

  **A. Gratuitous Promise.**

The defendants deny making any promise to sponsor the retaliation plaintiffs, but they also argue that any such promise was a merely "gratuitous promise," the revocation of which cannot constitute an "adverse action" for purposes of an FLSA retaliation claim. (Doc. 96 at 5-6).[5]

The retaliation plaintiffs point out a number of shortcomings in the defendants' brief presentation: (1) no showing that the Eleventh Circuit recognizes a "gratuitous promise" exception; (2) no showing that a "gratuitous promise" exception applies under the FLSA; (3) no showing that the defendants' promise to sponsor the plaintiffs was a "gratuitous promise" within the contemplation of the exception; and (4) no showing that the "gratuitous promise" exception is consistent with the Supreme Court's description of what constitutes an adverse action. (Doc. 99 at 9-12). The Court agrees with each of these points but addresses only the last of them.

The defendants' principal authority is *A Society Without a Name v. Virginia*, 655 F.3d 342 (4th Cir. 2011) ("*ASWAN*"), which declared that "retracting a gratuitous promise does not amount to a discriminatory act or an adverse action"

---

[5] A prima facie case of FLSA retaliation requires a showing that the plaintiff engaged in protected activity, that he "subsequently suffered adverse action by the employer," and that a causal connection exists between the two. *E.g., Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).

for purposes of a retaliation claim under the ADA. *Id*. at 350. The *ASWAN* Court did not propound this rule but borrowed it from *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473 (4th Cir. 1996) (en banc), which established the rule in the ERISA context.

Ten years after *Stiltner* was decided, the Supreme Court announced that the anti-retaliation provision of Title VII "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006); *accord id*. at 68.[6] It is difficult to see how revoking a promise to sponsor the retaliation plaintiffs for H-2B visas could fail to constitute an "adverse action" under this standard; without the sponsorship no visa could issue, and without the visa the retaliation plaintiffs could not be guest workers (as they had been in years past) and so could not earn income – an economic loss that presumably would discourage a reasonable worker from registering an FLSA complaint.[7]

---

[6] The defendants do not deny that *Burlington Northern* applies to retaliation cases under the FLSA. *See, e.g., Mullins v. City of New York*, 626 F.3d 47, 53 (2nd Cir. 2010) (*Burlington Northern* applies in the FLSA context); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342-43 (4th Cir. 2008) (same); *McBurnie v. City of Prescott*, 511 Fed. Appx. 624, 625 (9th Cir. 2013) (same).

[7] Revoking a promise to sponsor the retaliation plaintiffs (who were all past guest workers for the defendants) for H-2B visas looks a lot like the non-renewal of a teacher's contract, which constituted an "adverse employment action" even under the tighter, pre-*Burlington Northern* standard. *Johnson v. Atlanta Independent School System*, 137 Fed. Appx. 311, 315 (11th Cir. 2005). It also looks a lot like the withdrawal of an offer of employment, which likewise constituted an adverse employment action under the pre-*Burlington Northern* standard. *See Graham v. Gonzales*, 157 Fed. Appx. 139, 142 (11th Cir. 2005) (taking that proposition as a given).

The defendants assert that an employer's decision not to sponsor an H-1B visa for an existing employee did not constitute an "adverse employment action" under the pre-*Burlington Northern* regime. (Doc. 103 at 8). The Court does not find the defendants'

*ASWAN* was decided several years after *Burlington Northern*, but the majority opinion did not acknowledge that case or attempt to reconcile its "gratuitous promise" jurisprudence with the Supreme Court's "materially adverse" standard. In dissent, however, Judge Motz acknowledged *Burlington* and concluded that, "under that standard, the retraction of gratuitous benefits constitutes adverse action." 655 F.3d at 352-53 (Motz, J., concurring in part and dissenting in part). The defendants ignore Judge Motz's opinion, insisting that the majority opinion's silence is all that is necessary to demonstrate that the "gratuitous promise" exception "work[s] in harmony" with *Burlington Northern*, on the theory that the revocation of a gratuitous promise, "as a matter of law," cannot be "materially adverse." (Doc. 103 at 7-8). The Court cannot make that impressive logical leap; an action is materially adverse if it could dissuade a reasonable worker from complaining of unlawful conduct, and the retraction of even a gratuitous benefit would seem capable of drawing such a response; certainly the defendants have failed to show otherwise.[8]

### B. Unauthorized Alien.

According to the defendants, the Supreme Court "has made it clear that a foreign national not authorized to work in the United States cannot recover back

---

single authority persuasive on this point and, at any rate, this case is to be decided under the lower, "materially adverse" standard introduced by *Burlington Northern*.

[8] The *Stiltner* Court, in construing ERISA's anti-retaliation provision, relied on the NLRA, which the Fourth Circuit found to limit protection against retaliation to discrimination "in regard to … any term or condition of employment." 74 F.3d at 1483 (internal quotes omitted). The Fourth Circuit also relied on ERISA cases that limited actionable retaliation "to actions affecting the employer-employee relationship." *Id*. at 1484. The *Burlington Northern* Court, however, expressly rejected both lines of reasoning in the Title VII context. First, "the antiretaliation provision … is not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. at 64. Second, "the scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id*. at 67. The Supreme Court having rejected the underpinnings of the Fourth Circuit's "gratuitous promise" jurisprudence under an employment discrimination statute, it is difficult to see how the doctrine could survive in that context.

pay in retaliation cases." (Doc. 96 at 6). The retaliation plaintiffs are foreign nationals and, because they do not have H-2B visas, they are not authorized to work in the United States. Thus, the defendants conclude, they cannot recover back pay (the wages they would have earned from the defendants during the 2014-2015 season) under their retaliation claim. Of course, the very reason the retaliation plaintiffs have no H-2B visas (according to their allegations) is that the defendants violated the FLSA by withdrawing their sponsorship for the visas in retaliation for their having brought this action.[9] The defendants brush this observation aside with the insistence that a rule is a rule. (Doc. 103 at 12-13). They have failed, however, to persuade the Court that the rule extends so far.

The defendants rely on *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137 (2002). In *Hoffman*, a Mexican national who "had never been legally admitted to, or authorized to work in, the United States … gain[ed] employment with [the petitioner] only after tendering a birth certificate belonging to a friend who was born in Texas" – that is, by the use of fraudulent documents in violation of the Immigration Reform and Control Act of 1986 ("IRCA"). *Id*. at 141. Unaware of the worker's illegal status, the petitioner laid

---

[9] In their reply brief, the defendants deny that their withdrawal of sponsorship for the H-2B visas caused the retaliation plaintiffs not to receive them, on the grounds that government officials have the authority to deny a visa even after the employer agrees to sponsor an individual. (Doc. 100 at 13). As discussed in note 1, *supra*, the defendants cannot obtain dismissal on a ground they first raised in reply.

At any rate, the defendants have not attempted to show that the government's role in the issuance of H-2B visas breaks the chain of causation as a matter of law. The most they can muster is their unsupported insistence that the "Department of State is much more than a rubber stamp." (Doc. 100 at 13). Perhaps so but, according to the amended complaint, in practice the government has repeatedly and for years issued the retaliation plaintiffs H-2B visas when sponsored by the defendants, and it issued other plaintiffs H-2B visas for the 2014-2015 season based on the defendants' sponsorship – right up to the point the defendants realized they had been sued and swiftly withdrew their sponsorship as to those plaintiffs whose visas had not yet issued. (Doc. 20 at 23-24). The defendants' suggestion that the plaintiffs have alleged nothing to support the conclusion that they would have received visas but for the defendants' revocation of sponsorship, (*id*. at 13-14), must therefore be rejected.

10

him off in unlawful retaliation for his suspected union activities. *Id*. at 140. The NLRB ruled that the worker's remedy should include backpay for an extended period following his layoff. *Id*. at 141-42. The Supreme Court, however:

> conclude[d] that allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy as expressed in IRCA. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations.

*Id*. at 151.

The defendants would read *Hoffman* as a universal prohibition on backpay to illegal aliens, regardless of the circumstances, but it seems clear from the foregoing quote that the prohibition depends on whether the award of backpay in a particular case runs counter to the immigration policies animating IRCA. The defendants have not attempted to show that an award of backpay here would conflict in any way with national immigration policy.

Nor does it appear to the Court that such an award would do so. Unlike the worker in *Hoffman*, the retaliation plaintiffs have never been in this country without legal authorization, and they are no threat to enter illegally now. On the contrary, according to the amended complaint they have at every point played by the immigration rules. An award of backpay to the retaliation plaintiffs would not encourage anyone to use fraudulent documents to obtain employment (since they did not), would not overlook past immigration violations (since there are none), and would not encourage others to violate immigration laws in the future (since the retaliation plaintiffs would not receive backpay in direct or indirect consequence of any such violation).

While granting an award of backpay thus would not reward the retaliation plaintiffs for illegal conduct, denying an award of backpay would reward the defendants for their allegedly illegal conduct. Employers such as the defendants could freely retaliate against foreign workers who complain of legal violations by

withholding or revoking sponsorship for guest worker status, confident that their very act of unlawful retaliation would itself eliminate the workers' recovery for such retaliation. In the words of the *Hoffman* Court, such an approach would "condone prior violations of [the FLSA] and encourage future violations." 535 U.S. at 151. The defendants have not attempted to justify such a perverse result.

## CONCLUSION

For the reasons set forth above, the defendants' motion for judgment on the pleadings is **denied**.

DONE and ORDERED this 8th day of March, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE